## JACKSON IRON & STEEL COMPANY v. GLANDER.

Board of Tax Appeals.

No. 16875. Decided February 20, 1950.

Bricker, Marburger, Evatt & Barton, Columbus, for appellant.

Herbert S. Duffy, Atty Genl., W. H. Annat, Asst. Atty Genl., Columbus, for appellee.

This is an appeal from a final order of the Tax Commissioner under date of September 19, 1949, wherein a prior order was modified and as modified confirmed a sales tax assessment of $1364.92 with a penalty of $204.74, total $1569.66; and a use tax assessment of $226.50 with penalty of $33.99, total $260.49, all totaling $1830.15. The matter now comes on for final determination upon the notice of appeal, the Commissioner's transcript, a record made before an attorney examiner on November 29 last and briefs of counsel. It is suggested that the issue presents a minor one of fact. However, upon examination of the evidence found within the record, it is established by uncontradicted proof that Mine No. 2 is and will be operated as is Mine No. 1. Such being true, the minor question of fact disappears, leaving only a question of law for solution. The facts necessary to display the legal query are as follows.

Appellant is engaged in the production of what is known as silvery pig iron, which is a high silicon iron having a carbon content of 2 to 3 per cent. It is said to be produced by only two firms, both of which are in Jackson County, Ohio, and only by the use of Jackson County coal. The Company buys coke, which is mixed with its coal in a proportion of 5 to 1, and added to iron ore and limestone, produces silvery pig iron. The reason for the results obtained by the use of Jackson County coal is unexplainable. The taxpayer operates three mines in close proximity to its plant, one of which is a strip mine, the entire output of which is used by the appellant in the manufacturing of its particular pig iron product. No coal mined from this strip mine is sold. The Jackson Company's other two mines are shaft operations producing the same grade or quality of coal. It uses 64.23 per cent of their entire output in the production of silvery pig iron. The balance of the output of these two shaft mines, that is, 35.77 per cent, is nut, pea and slack coal which is not usable in the production of its product and is sold for resale by the purchasers. In the course of its mining operations appellant purchased certain mine machinery and equipment which it is using in the production of all the coal it is producing in these three mines' operation. It is upon this machinery and equipment that the sales and use tax assessment is made. By the order made, the Department of Taxation has recognized as nontaxable that portion of the percentage of the cost

of machinery and equipment used in the production of the coal mined for sale from the two shaft mines, to wit, 35.77% (§§5546-1 and 5546-25); but has assessed at 3% the total cost of machinery and equipment used in the stripping operation, and 64.23% of the cost of machinery and equipment used in the two shaft mines. The order in effect finds that appellant's purchased and used equipment devoted to producing coal for sale is not taxable, and that devoted to production of coal used by it in the production of pig iron is taxable. The question, therefore, is, as stated by appellant;

"Whether or not purchases of mining equipment to be directly used in mining coal for use and consumption by the purchaser of such equipment in manufacturing pig iron for sale is subject to sales and use taxes in Ohio?"

Secs. 5546-1 and 5546-25 GC were under consideration in Bailey v. Evatt, 142 Oh St 616, wherein, at page 620, the court had this to say concerning their purpose:

"The primary purpose of the statute here under consideration is to encourage the production of more valuable tangible personal property for sale, itself subject to the sales tax, by exempting (excepting) from the operation of such tax the purchases of property used and consumed by the producer in the production of such ultimate tangible personal property, and at the same time to avoid a species of double taxation. Hence the statute exempts (excepts) sales of tangible personal property in which the purpose of the consumer is to incorporate by manufacturing, assembling, processing or refining the things transferred into tangible personal property for sale, **or to use or consume the thing transferred directly in the production of tangible personal property for sale, by manufacturing, processing, refining, mining. * * *.**"

Sec. 5546-2 GC states, in its first paragraph, that the purpose of the act is to levy an excise tax "on each retail sale made in this state of tangible personal property" with certain exceptions. Sec. 5546-1 GC defines "retail sales" with certain exception. It reads in part:

" 'Retail sale' and 'sales at retail' **include all sales excepting those in which the purpose of the consumer (The Jackson Company) is** (a) to resell the thing transferred in the form in which the same is, or is to be, received by him; or (b) to incorporate the thing transferred as a material or a part,

into tangible personal property to be produced for sale by manufacturing, assembling, processing or refining, or **to use or consume the thing transferred directly in the production of tangible personal property for sale by * * * mining, * * *.**"

Sec. 5546-25 GC employs the same language in its application to the assessment of use taxation. Appellant contends that these sections, in so far as the exceptions herein emphasized are concerned, as distinguished from exemptions, are entitled to be construed liberally; that to do otherwise can but lead to absurd consequences and double taxation, and a departure from long established administrative practice, examples of which are given and among which are found the failure or omission to tax farm machinery used to produce unsold farm crops which are thereafter fed to live stock. It is true that it was said in the opinion in **Kroger Grocery & Baking Co. v. Glander, 149 Oh St, 120, (129 & 130),** that a liberal construction must be given to exceptions in a definition of "retail sales." Be that as it may, the pertinent provisions of §§5546-2 and 5546-26 GC, provide:

Sec. 5546-2 GC:

"For the purpose of the proper administration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that all sales made in this state are subject to the tax hereby levied until the contrary is established."

Sec. 5546-26 GC:

"For the purpose of the proper adminstration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that tangible personal property purchased on or after January 1, 1936, by any person for delivery in this state is purchased for storage, use, or other consumption in this state."

See **The Cleveland-Cliffs Iron Co. v. Glander, Tax Commr., 145 Oh St 423,** wherein it is said at page 430:

"It is well settled that the provision of any statute which purports to except certain property from general statutory provisions governing taxation is a measure of exemption, and that laws relating to exemption of property from taxation being in derogation of equal rights are strictly construed."

It is equally true that if this mine machinery and equipment be subject to sales and use tax in proportion to the coal con-

sumed and not sold, that a further sales tax will be subject to imposition against the seller or consumer of the pig iron if and when sold within the State. Whether such a course ■ will lead to absurdity, however, is problematical if the pig iron be followed into sheet steel, into automobile fenders and then, as a finished product, into an automobile. This is the first direct assertion of the principles herein contended for as this Board is able to find. We do, however, confess that comparable situations may be found to exist within the entries of this Board, but in none of which was it the principal bone of contention but a minor difference concerning which no particular attention was paid. The Board, therefore, cannot follow the propriety of appellant's assertion that an established administrative practice is here violated. We are not enamoured of appellant's farming illustration due to the fact that a general farming practice is all a well recognized single enterprise which cannot be conducted otherwise as distinguished from the mining of coal and the manufacture of pig iron, which are equally well known as separate and distinct businesses which are only found united in cases of "captive mines" which advantage the major business. The lure of liberality in construction of exception provisions in regard to the purchase of machinery in general farming operations is much more enticing.

The legislature saw fit to levy an excise tax on all "retail sales," but excepted from the definition of the term "retail sales" equipment purchased and used for the purpose of mining coal for sale. It did not go further, however, and except from the definition of the term "retail sales" property purchased to produce coal to be used (and not sold) by the miner of the coal as an ingredient in manufacturing another product (pig iron) for sale. If that had been intended it could have easily been so stated. The Board considers that it is now asked to write such a further exception into §§5546-1 and 5546-25 GC, which it has no right to do even if its refusal leads to absurdity and double taxation. We feel that the maxim "expressio unius est exclusio alterius" as the rule of construction has direct application in the presented situation.

Appellant suggests that incorporation of a subsidiary company to operate its mines would effect or have effected the relief it now seeks, and to provoke such to be done leads to absurdity; but be that fact as it may, the Board of Tax Appeals considers that it lacks authority to write into the statutes that which the legislature did not see fit to incorporate therein.

The Tax Commissioner, in his brief, makes the following

statement which is approved in its entirety by the Board of Tax Appeals:

"Except for an overstatement by or in the sum of eighty cents in the amount of the use tax deficiency and except as to the reduction by 35.77% of that portion of the sales tax including penalty assessed upon the purchase of coal mining equipment for appellant's deep mine No. 2 (which portion amounts to $735.65), it is the contention of the Tax Commissioner that his final order here under appeal should be affirmed."

The final order of the Tax Commissioner herein complained of is modified to the extent set out in this entry and as so modified the final order is affirmed and this cause is remanded to the Tax Commissioner with instructions to deduct the sum of eighty cents from the use tax assessment and to reduce by 35.77% that portion of the sales tax assessment, including penalty, assessed upon the purchase of coal mining equipment for appellant's deep mine No. 2 (which portion amounts to $735.65).